NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

AUG 24 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 19-16419 |
| Plaintiff-Appellee, | D.C. Nos. 2:16-cv-00955-KJD |
| v. | 2:08-cr-00283-JCM-PAL-3 |
| MARKETTE TILLMAN, AKA Ketty P, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Nevada
Kent J. Dawson, District Judge, Presiding

Argued and Submitted December 10, 2020
Pasadena, California

Before: WATFORD, THAPAR,** and COLLINS, Circuit Judges.

Markette Tillman appeals the district court's denial of his motion under 28

U.S.C. § 2255, which asserted that his trial counsel had rendered ineffective

assistance in connection with Tillman's guilty plea to drug trafficking and

racketeering charges. Reviewing the district court's denial of the motion de novo

and its factual findings for clear error, *United States v. Aguirre-Ganceda*, 592 F.3d

---

* This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

** The Honorable Amul R. Thapar, United States Circuit Judge for the U.S. Court
of Appeals for the Sixth Circuit, sitting by designation.

1043, 1045 (9th Cir. 2010), we affirm.

# I

## A

In October 2008, Tillman and nine others were indicted in federal court for a variety of charges in connection with their alleged participation in the "Playboy Bloods" gang, including conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d); murder in aid of racketeering, *id*. § 1959(a)(1);[1] use of a firearm during a crime of violence, *id*. § 924(c); and possession of cocaine base with intent to distribute, 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii).

Tillman was originally represented only by appointed attorney Bret Whipple. However, because the VICAR murder charge carried a possible penalty of death, *see* 18 U.S.C. § 1959(a)(1), Tillman was provided an additional appointed attorney (John Grele), who was "learned in the law applicable to capital cases," *see id*. § 3005. After the Government subsequently decided not to pursue the death penalty, the district court relieved Whipple and ordered Grele to remain as Tillman's counsel. The district judge presiding over the case, then-Chief Judge Robert Jones, later removed Grele as Tillman's counsel, and Lance Maningo was

---

[1] Because § 1959's title is "Violent crimes in aid of racketeering activity," that section is sometimes referred to as the "VICAR statute."

appointed as replacement counsel. Another attorney from Maningo's firm (James Oronoz) also subsequently appeared as co-counsel for Tillman. Tillman appealed the order removing Grele, but we held that we lacked jurisdiction to review it. *See United States v. Tillman*, 756 F.3d 1144, 1149–50 (9th Cir. 2014).

In October 2013, Chief Judge Jones recused himself from the case, which was reassigned to Judge Kent Dawson. In the weeks leading up to trial, the Government extended a plea offer to Tillman that would have included a recommended sentence of 18 years. On the morning of trial on July 28, 2014, the Government asked the court to "canvas counsel and the defendant" about that offer, and the court agreed to do so in order to address any potential concerns about ineffective assistance of counsel. During a break in the proceedings, Tillman was afforded an opportunity to review the written plea agreement, and he subsequently reaffirmed, on the record, that he rejected the proposed agreement as unreasonable. He did so even though his counsel had stated, on the record, that they recommended that he accept it. During the on-the-record colloquy concerning this issue, Tillman's counsel (Maningo) initially stated that the Government had agreed, as part of the proposed plea deal, to allow Tillman to preserve his right to appeal the court's earlier rejection of his claims of a speedy trial right violation. The Government, however, immediately objected, saying, "That's not correct." Maningo corrected himself, saying that although there had been discussions

3

indicating that this was something the Government "would consider if Mr. Tillman would advance the negotiations towards possibly resolving the case," there were "hurdles in the ultimate negotiations" and nothing was ever "formalized."

On the second day of trial, however, the parties entered into a different plea agreement under which Tillman pleaded guilty to two counts of the operative superseding indictment (RICO conspiracy and possession of cocaine base with intent to distribute) in exchange for dismissal of the remaining charges and an agreement to jointly recommend a sentence of 23 years. The plea agreement contained a waiver of the right to appeal, as well as a waiver of "all collateral challenges, . . . except non-waivable claims of ineffective assistance of counsel."

After Tillman pleaded guilty but before sentencing, he sent two pro se letters to the district court claiming that his attorneys had been ineffective and that he had been "under great pressure and duress" to agree to the plea agreement. At a November 25, 2014 hearing regarding these issues, Tillman asserted that, at the time he rejected the initial plea offer, he thought he could avoid conviction on the VICAR murder charge by proving at trial that he was not the shooter. He claimed that he learned for the first time in the Government's opening statement that, based on the RICO conspiracy, he could be found vicariously guilty of VICAR murder regardless of whether he pulled the trigger. *See, e.g.*, *United States v. Bingham*, 653 F.3d 983, 996–98 (9th Cir. 2011) (upholding *Pinkerton* liability for VICAR

4

murder). Tillman stated that, had he known that, he would have accepted the 18-year plea deal.

At the November 25 hearing, the district court noted that Tillman had had multiple counsel over a lengthy period of time, and the court stated that it did not believe that his attorneys had never advised him, "at some point, that [he] could be held liable" for substantive offenses based on his participation in a conspiracy. When Tillman insisted that he had not been told that, the court responded, "I don't believe it, sir. You are not credible." The district court also stated that Tillman, after hearing the Government mention vicarious liability in its opening statement, could have raised the issue at the change-of-plea hearing the next day, but failed to do so. The court further noted that, during the plea colloquy, Tillman had denied any duress and had affirmatively represented that he was satisfied with his counsel's performance. The court concluded by telling Tillman that, based on these points, as well as the court's "observation of you now," the court was "finding that you are not credible." Later in the same hearing, after Tillman further claimed that he had pleaded guilty without reading the plea agreement and that he had not agreed to a 23-year sentence, the court noted that he had said the opposite at his plea colloquy. The court again told Tillman: "You are lying. You are not credible. You are making misrepresentations about what happened that are clearly contradicted by the record that is before the Court."

At sentencing, the district court followed the parties' joint recommendation of 23 years' imprisonment. Tillman filed an appeal, but we granted the Government's motion to dismiss the appeal "in light of the valid appeal waiver" contained in his plea agreement.

**B**

Tillman thereafter filed a pro se motion under § 2255, claiming that his counsel (Maningo and Oronoz) had been ineffective in multiple respects. The district court directed Maningo and Oronoz to file declarations addressing the points raised, and they did so. The court declined to hold an evidentiary hearing or to appoint counsel for Tillman, and after reviewing the written submissions, it denied the § 2255 motion and denied a certificate of appealability.

We thereafter granted a certificate of appealability "with respect to the following issue: whether appellant received ineffective assistance of counsel in connection with appellant's decision to enter a guilty plea, including advice regarding (1) potential vicarious liability under 18 U.S.C. § 1959(a), and (2) the appeal wa[iv]er of all claims except for ineffective assistance of counsel."

**II**

Tillman challenges the district court's rejection of his claim that his trial counsel was ineffective in failing to explain vicarious liability under RICO to him. The district court concluded that Tillman's statements about the content of his

6

counsel's communications on this score were not credible, and it therefore rejected this claim as factually unsupported. We find no basis for setting aside the district court's conclusion.

As noted earlier, Tillman first raised this argument at a hearing that occurred after his guilty plea but before sentencing, and the district court at that hearing explicitly found Tillman "not credible" with respect to this claim. *See supra* at 5. In denying Tillman's § 2255 motion, the district court relied on this previous credibility finding, as well as on the affidavits of Maningo and Oronoz stating that they "thoroughly and extensively discussed the issues of Tillman's liability under the theories of conspiracy and vicarious liability under R.I.C.O." with Tillman. The district court accordingly found "that Tillman's counsel adequately explained Tillman's liability for murder under RICO." On this record, we cannot say that that finding is clearly erroneous. Therefore, Tillman cannot show that his "counsel's performance was deficient" in this respect, as required to establish a claim for ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Tillman argues that it was error for the district court to have made this finding without holding an evidentiary hearing on the § 2255 motion, but we find no abuse of discretion. *See Stewart v. Cate*, 757 F.3d 929, 934 (9th Cir. 2014). The district court had already had an opportunity, at an earlier hearing, to question

Tillman about this issue and to observe his demeanor as he explained his factual contentions on this score.  At that hearing, the court concluded, based on its own "observation" of Tillman, the implausibility of his assertions, and his contradiction of statements he had made at his plea colloquy, that he was "not credible" and was "lying." *See supra* at 5.  The additional materials received in connection with the § 2255 motion did not alter the state of the record in a way that would have required the district court to hold an evidentiary hearing to re-evaluate Tillman's credibility.  With respect to this issue, Tillman's declaration merely repeated the same factual contentions the district court had previously found to lack credibility, and Maningo's and Oronoz's declarations expressly affirmed that they had discussed the vicarious liability issue with Tillman.  Under these circumstances, the record was thus already sufficient to "conclusively show" that Tillman was "entitled to no relief" on this claim, and no evidentiary hearing was warranted.  *See* 28 U.S.C. § 2255(b); *see also Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977) (noting that "the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion").

### III

The district court did not err in rejecting Tillman's claim that his counsel rendered ineffective assistance by advising him to sign a plea agreement that contained a waiver of appellate rights.

8

Ordinarily, when arguing that counsel's advice to accept a plea offer was ineffective assistance, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Tillman specifically states, however, that he "is *not* arguing that he would have insisted on going to trial" (emphasis added). Tillman's theory rests instead on the premise that his counsel was prejudicially ineffective by failing to successfully negotiate a plea deal that excluded an appellate waiver, which would have allowed Tillman *both* to avoid trial (where he would have faced a mandatory life sentence if convicted on the VICAR murder charge, *see United States v. Rollness*, 561 F.3d 996, 998 (9th Cir. 2009)) *and* to pursue his assertedly meritorious appellate issues. But as the district court correctly noted, "the government insisted on the appeal waiver" as a condition of any plea. Tillman has not pointed to anything in the record that would support the conclusion that the Government would ever have agreed to accept a plea in this case that did not include an appeal waiver. On the contrary, both Maningo and Oronoz stated in their affidavits that "the Government insisted upon his waiver of certain collateral rights, in particular, a challenge to a violation of his Speedy Trial Rights, as *essential* to his acceptance of the guilty plea" (emphasis added). Moreover, when Maningo initially suggested at the colloquy on the first day of trial that the Government had agreed to an appeal

9

waiver, the Government immediately interjected that that was "not correct." *See supra* at 3. Maningo corrected himself and stated that, although he had perceived this as something that the Government might consider, there were "hurdles in the ultimate negotiations" and the Government never agreed to that. *See supra* at 4.

Because counsel was not prejudicially ineffective in failing to obtain a plea condition that the Government was unwilling to grant, the district court properly rejected this claim.

**AFFIRMED.**